Botnton, J.
Section 199 of the municipal code, as-amended March 29,1875, conferred express power on municipal corporations to regulate ale, beer and porter houses and shops, and it was in the exercise of this power that the ordinance under which the defendant in error was convicted, was passed. The ground upon which it is contended that the ordinance is invalid, is, that it makes no general exception from its operation of cases of necessity or charity, or in behalf of those who conscientiously observe the seventh day of the week as a day of rest. Hence, it is said, that the same is repugnant to the general laws of the state, and consequently void.
In support of this claim The City of Canton v. Nist, 9 Ohio St. 489, is relied on. The provision of the statute which was under consideration in that case, and which was-claimed to confer power to pass the ordinance held to be-invalid, was the 83d section of the act to provide for the organization of cities and incorporated villages, passed May 3, 1852. Swan’s Rev. Stats. 964. That section conferred power upon municipal corporations to make and publish such by-laws and ordinances, not inconsistent with the laws of the state, as to them should seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporation and the inhabitants thereof. The defendant in that case was charged with keeping open his grocery, for the purpose of business, on Sunday, in violation of the provisions of the ordinance, and it was held that an ordinance prohibiting the opening of shops, and other business places, for the purpose of business on Sunday, without excepting, in conformity to the general laws of the state, cases of necessity and charity, and without exempting from its operation persons who conscientiously observe the seventh day of the week as Sabbath, was void. The only effect of this holding was to declare that the language of section 33 of said act did not authorize the passage of the-ordinance under wdiich the defendant was prosecuted. No question of the power of the corporation to regulate, or *510 prohibit, ale and porter shops and houses, as authorized by the last clause of the 25th section of said act, was involved, nor was there any thing in the case that would have made discussion of that question either relevant or proper. The decision in that ease is, therefore, not decisive of the ■question involved in this. The question here is, whether the power to regulate ale, beer and porter houses and shops, given by the amended act of 1875, is sufficiently comprehensive in’its scope, to authorize the municipal authorities to prohibit the owner from keeping the same open on Sunday. We think it is. Such houses and shops are places of public entertainment, and in authorizing their regulation there can be no doubt that the legislature intended to ■confer power to place them under such reasonable restraint, as would mitigate the evils growing out of the business therein conducted.
If the power to regulate carries with it no power to require such places to be closed upon any day, or for any time, it is difficult to see what useful purpose the statute was designed to effect or accomplish. That the legislature may exercise such power will not be denied, and who can doubt, that, if the legislature were restricted by the constitution to the power to regulate the sale of intoxicating liquors, that inhibiting sales on Sunday, would be within the just exercise of the power thus restricted. Power to regulate carries with it power to restrain. Thomas v. Mount Vernon, 9 Ohio, 290 ; Vandine’s Case, 6 Pick. 190; 2 Comyn’s Digest, title Bye-Law, p. 283. And if the regulation or l’estraint is not unreasonable, the ordinance is valid. And it is no objection to its validity that similar regulations are not extended to all parts of the state. Burckholter v. McConnellsville, 20 Ohio St. 308.
In State v. Freeman, 38 N. H. 426, the charter, in pursuance of which the ordinance was passed under which the defendant, in that case, was prosecuted, authorized the city to adopt such by-laws, regulations, and ordinances as might seem to be for the well being of the city, and not 'repugnant to the constitution and laws of the state; and it *511 was held, that an ordinance prohibiting the keeping open of restaurants after 10 o’clock at night, was within the power conferred by the charter. In that ease the grant of power to the city was much less specific in its terms, than the grant of power made by the provisions of our municipal code to municipal corporations, to regulate ale, beer and porter houses. Since 1831, it has, by general legislation, been unlawful for any tavern-keeper, or other person, to sell or barter on Sunday, any spirituous liquors, except to travelers. 1 S. & C. 448. And the exception in favor of travelers no longer prevails. Rev. Stats. § 6944. The selling or giving away of intoxicating liquors on election days, or the keeping open, on such days, of a place where such liquors are habitually sold, is, and long has been, prohibited by the statute. Rev. Stats. § 6948, (61 Ohio Laws, 24.) These acts are indicative of a policy with which the object sought to be accomplished by the passage of the ordinance here in question, is in complete accord.
They are police regulations established to secure public order, and all such regulations, whether enacted by the legislature directly, or established under power conferred upon municipal corporations, operate to restrain and abridge rights previously existing. But they are not for that reason void. The restraint imposed being for the public good, private interests must yield to the public welfare.
It is said, however, that the second section of the ordinance, in making certain facts prima facie evidence of guilt, is unreasonable in its provisions, and, therefore, that the whole ordinance is, for that reason, void. The conclusion does not necessarily follow, if the premise be admitted.
If it be true that the second section, either in whole or in any of its parts, is open to the objection stated, that circumstance does not affect the provisions of the first section, unless the two sections are so connected in their subject-matter, and inseparable in their provisions, as to lead to the inference that the fii’st section would not have been adopted without the second. The same rule applies to a by-law, or ordinance, that applies to a statute; and that is, *512 that where the statute consists of severable and independent parts, having no general influence over one another, and a part is valid and a part is void, the part which is valid is operative, and will be carried into effect. Applying this principle to the point suggested, and it is at once relieved of all difficulty. The first section defines the offense. The second provides, that certain facts shall constitute prima facie evidence that the offense defined in the first section has been committed. The two sections are wholly distinct in their subject-matter, and in their purpose and object. The second section in no just sense qualifies the offense, but relates wholly to the evidence by which the offense may be supported or established. Assuming the second section to be unreasonable in declaring the lighting up of such room to be prima facie evidence of a keeping open, or to be unreasonable in other of its provisions, it in nowise affects the validity of the first section. As well might it be said, if a statute were void which declared that possession of stolen goods soon after the theft should be prima facie evidence that the possessor stole them, that the provision defining larceny was void also-.
The second section neither prescribes, nor does it profess to prescribe, a mode for conducting the trial. There is nothing in the record that either shows, or tends to show, that the defendant was convicted on any other than the most direct evidence that he committed the offense. No facts are certified. To say, assumiug the second section to be void, that a presumption arises that a conviction was-had upon proof of the facts which are declared by that section to be-prima facie evidence that the offense was committed, is an inversion of the rule, which requires the party who alleges error to exist, to show it affirmatively.
It is also urged, that, as the mayor instructed the jury that they had nothing whatever to do with the law, or ordinance, and that they were only to decide whether the-defendant was guilty or not under the ordinance as they found it, that this left them at liberty to convict the defendant on proof that a light was seen burning in his house.. *513 But no such fact is legally made to appear. "What purports to be a bill of exceptions, containing evidence that such charge was given, was taken five days after the trial was over, and upon a motion for a new trial then made. The only provisions made for reviewing a final sentence or conviction before a mayor -by the law in force when the proceedings in the present case were had, were found in sections 125, 179, 180 and 181 of the municipal code. Van Buskirk v. The City of Newark, 26 Ohio St. 37. And the only mode of bringing the facts before the revising court was prescribed by section 180. That section required the mayor to return, on the writ previously allowed, all matters of record, or on file, touching the proceedings, or a transcript thereof, and any facts which may have been, noted by him, or certified in the nature of a bill of exceptions at the time of trial. No power is conferred upon the mayor, after the trial is at an end, and at a future day, to reopen the case and take further action, and to certify such action for revision. And a reviewing court acquires no jurisdiction to examine the question so certified. The bill of exceptions taken on November 22, 1875, was, therefore, wholly unauthorized, and laid no foundation for a review of the question therein sought to be raised.
The judgment of the district court is reversed, and that of the common pleas affirmed.